IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| Cincinnati Insurance Company, ) | C.A. No. 4:09 CV 1251 TLW |
| ) | |
| Plaintiff, ) | |
| v. ) | |
| ) | |
| Low Country Concrete Construction, Inc.; ) | |
| Low Country Concrete, Inc.; Jerry B. Vereen ) | **MEMORANDUM IN SUPPORT** |
| d/b/a Low Country Concrete, Inc.; and Kitty ) | **OF PLAINTIFF'S MOTION** |
| Tilghman McEaddy and T. Hunter McEaddy, ) | **FOR SUMMARY JUDGMENT** |
| ) | |
| Defendants. ) | |

Plaintiff Cincinnati Insurance Company ("Cincinnati"), by and through its undersigned attorneys, submits this Memorandum in support of its Motion for Summary Judgment.

## INTRODUCTION

This is a declaratory judgment action to determine whether Cincinnati is obligated to indemnify its insured, Low Country Concrete Construction, Inc. ("Low Country"), for alleged construction defects by Low Country in building a seawall on the Little River Inlet in Horry County, South Carolina. According to the underlying complaint, Low Country was hired to remove a pre-existing wooden seawall and construct a new concrete seawall in its place. ***Exhibit A - Underlying Complaint ¶9***. The underlying complaint alleges Low Country improperly built the seawall, which resulted in "property damage and actual loss of property due to erosion." *Underlying Complaint ¶14.*

Cincinnati provided a defense in the underlying lawsuit for Low Country under a Reservation of Rights. That lawsuit was recently settled with the agreement and participation of Low Country and Low Country's personal counsel, and litigation defense counsel provided by Cincinnati. The purpose of this declaratory judgment action is to determine if any portion of the

1223361

1

damage alleged in the underlying lawsuit is covered by the Commercial General Liability (CGL) insurance policy issued by Cincinnati.

Cincinnati is not obligated to indemnify Low Country for any damage because the underlying complaint does not allege "property damage" caused by an "occurrence." Even assuming the underlying complaint alleges "property damage" caused by an "occurrence," such damage is excluded from coverage by multiple policy exclusions, particularly the "your work" and "your product" exclusions. Cincinnati is entitled to judgment as a matter of law.

## LEGAL STANDARD

A declaratory judgment action is neither legal nor equitable, and the standard of review depends on the nature of the underlying issues. Campbell v. Marion County Hosp. Dist., 354 S.C. 274, 279, 580 S.E.2d 163, 165 (Ct. App. 2003). "A suit to determine coverage under an insurance policy is an action at law." S.C. Farm Bureau Mut. Ins. Co. v. S.E.C.U.R.E. Underwriters Risk Retention Group, 347 S.C. 333, 338, 554 S.E.2d 870, 873 (Ct. App. 2001).

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party moving for summary judgment has the burden of showing the absence of a genuine issue of material fact, and the court must view the evidence before it, and the inferences to be drawn from the evidence before it, in the light most favorable to the non-moving party. U.S. v. Diebold, Inc., 369 U.S. 654, 655 (1962). The non-moving party must then go beyond the pleadings and set forth specific facts showing there is a genuine issue of material fact for trial. Fed. R. Civ. P. 56(e). The non-moving party "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985).

## UNDERLYING ACTION

On January 15, 2008, Kitty and T. Hunter McEaddy (the "McEaddys") filed a Complaint against Low Country and other allegedly related defendants in the Horry County Court of Common Pleas, civil action number 2008-CP-26-0365 ("Underlying Action"). The other defendants to the Underlying Action were eventually dismissed pursuant to a July 7, 2008 Consent Order, therefore the Underlying Action proceeded solely against the insured Low Country Concrete Construction, Inc. *Exhibit B – July 7, 2008 Consent Order dismissing Low Country Concrete, Inc. and Jerry B. Vereen d/b/a Low Country Concrete, Inc.* In the Underlying Action, the McEaddys alleged that on December 10, 2002 they entered into a contract with Low Country to remove an old wooden seawall and build a new concrete seawall, which Low Country performed. *Underlying Complaint ¶9*. The Underlying Action alleged the concrete seawall suffers from "structural defects" and must be repaired or replaced. *Underlying Complaint ¶13*. The Underlying Action further alleged that as a result of the defective seawall the McEaddys have suffered "property damage and actual loss of property due to erosion" and "loss of use and loss of value" of the property. *Underlying Complaint ¶¶ 14, 15*. The McEaddys asserted causes of action against Low Country for negligence, breach of warranty, and breach of contract.

Cincinnati provided litigation defense counsel to defend its insured in the Underlying Action under a Reservation of Rights. *Exhibit C - May 10, 2008 Letter to Low Country Concrete Construction, Inc. from Larry S. Christian, Cincinnati Field Claims Superintendent.* The Underlying Action was recently settled by agreement and full participation of the insured, the insured's separately retained counsel Attorney Dunn Hollingsworth, Esq., litigation defense counsel provided by Cincinnati, and the McEaddy plaintiffs and plaintiffs' counsel Attorney Frank

1223361                                    3

Grimball. The purpose of this declaratory judgment action is to determine if any damage alleged in the Underlying Action is covered by the Policy.

## I. POLICY LANGUAGE

Cincinnati issued commercial general liability policy number CAP5484396 to Clardy Concrete and Vereen Concrete d/b/a Low Country Concrete effective from July 1, 2002 to July 1, 2003. Cincinnati subsequently issued the identical policy to Low Country Concrete Construction, Inc. effective from July 1, 2003 to July 1 2008. The term "Policy" shall refer to the above-referenced policies both individually and collectively. ***Exhibit D** – Insurance Policy between Cincinnati and Low Country.*[1]

Pursuant to the Policy, Cincinnati agreed to pay "those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies."[2] The Policy provides:

> This insurance applies to "bodily injury" and "property damage"
>
> *only if*:
>
> (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "covered territory"; and
>
> (2) The "bodily injury" or "property damage" occurs during the policy period.

(emphasis added). The Policy defines "property damage" as "physical injury to tangible property, including all resulting loss of use of that property" and "loss of use of tangible property

---

[1] Exhibit A to the declaratory judgment complaint inadvertently omitted the policy between Cincinnati and Low Country Concrete Construction, Inc. That policy, which contains identical language to the policy between Cincinnati and Clardy Concrete and Vereen Concrete d/b/a Low Country Concrete, is included herein.

[2] No allegations of "bodily injury" are made in the underlying complaint.

that is not physically injured." The Policy defines an "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." An "accident" is an "unexpected happening or event, which occurs by chance and usually suddenly, with harmful results, not intended or designed by the person suffering the harm or hurt." Green v. U. Ins. Co. of Am., 254 S.C. 202, 206, 174 S.E.2d 400, 402 (1970). In sum, the Policy covers only "property damage" caused by an "occurrence," subject to various Policy exclusions and endorsements.

## II.  NO DUTY TO INDEMNIFY

"An insurer's duty to defend is separate and distinct from its obligation to pay a judgment rendered against an insured." City of Hartsville v. S.C. Mun. Ins. & Risk Financing Fund, 382 S.C. 535, 544, 677 S.E.2d 574, 578 (2009). "While an insurer must frequently defend both potentially covered claims and claims that are not covered under its policy, it is only required to indemnify covered claims for which liability is incurred." Perdue Farms, Inc. v. Travelers Cas. & Surety Co. of Am., 448 F.3d 252, 258 (4th Cir. 2006).

Cincinnati acknowledged that the duty to defend and the duty to indemnify are separate and distinct obligations under the Policy and hired counsel to defend Low Country in the Underlying Action under a full Reservation of Rights. The parties in the Underlying Action have reached a settlement, but the present coverage issues remain.

## III.  UNDERLYING ACTION DOES NOT ALLEGE AN "OCCURRENCE"

The Underlying Action does not allege "property damage" caused by an "occurrence" and, even if it did, coverage for such damage is precluded by Policy exclusions. In September, 2009, the South Carolina Supreme Court put an end to years of confusion by courts on all levels on what is an "occurrence" under a CGL policy in a construction defect case, and the meaning of

its opinion in L-J v. Bituminous Fire & Marine Insurance Co., 366 S.C. 117, 621 S.E.2d 33 (2005). In Auto Owners Ins. Co. Inc. v. Newman, 385 S.C. 187, 194, 684 S.E.2d 541, 545 (2009), an insured's subcontractor had negligently installed stucco on a home, and as a result, moisture seeped into the home causing substantial water damage to the home's exterior sheathing and wood framing. The Supreme Court held that faulty workmanship (stucco application) alone is not an "occurrence"; however, damage to *other property* resulting from faulty workmanship (moisture intrusion) is an "occurrence." Id., 385 S.C. at 194, 684 S.E.2d at 544. See also, Century Indem. Co. v. Golden Hills Builders, Inc., 348 S.C. 559, 566, 561 S.E.2d 355, 359 (2002) (holding that CGL policies "do not insure an insured's work itself, but rather, they generally insure consequential risks that stem from that work."); C.D. Walters Constr. Co. v. Fireman's Ins. Co., 281 S.C. 593, 597, 316 S.E.2d 709, 712 (Ct. App. 1984) ("[The CGL] policy does not cover faulty workmanship, but rather faulty workmanship which causes an accident").

Following the September 2009 Newman opinion, in late 2009 United States District Courts in South Carolina held under South Carolina law that faulty workmanship is not an "occurrence." Builders Mut. Ins. Co. v. Kalman, 2009 WL 4807003, *4 (D.S.C. December 8, 2009) (holding that under South Carolina law the construction defects of the subject residence were "not, in themselves, sufficient to constitute an 'occurrence.'"); Jessco Inc. v. Builders Mut. Ins. Co., 2009 WL 3065210, *5 (D.S.C. September 22, 2009) (holding that the current law of South Carolina is "a commercial general liability policy is intended to provide coverage for tort liability for physical damage to property of others, but not for the insured's contractual liability which causes economic loss.").

Cincinnati did not agree to cover the cost to remove, repair, or replace allegedly defective work performed by Low Country such as the McEaddys' concrete seawall. While Low Country may be obligated to repair or replace the defective seawall, this liability is not what a CGL policy is designed to cover. South Carolina Courts have explained the risk intended to be insured by the standard CGL policy such as the Policy between Cincinnati and Low County. In <u>C.D. Walters Construction Company v. Fireman's Insurance Company of Newark, New Jersey</u>, 281 S.C. 593, 316 S.E.2d 709 (Ct. App. 1984), the South Carolina Court of Appeals explained:

> The risk intended to be insured is the possibility that the goods, products or work of the insured, once relinquished or completed, will cause bodily injury or damage to property ***other than to the product or completed work itself***, and for which the insured may be found liable. The insured, as a source of goods or services, may be liable as a matter of contract law to make good on products or work which is defective or otherwise unsuitable because it is lacking in some capacity. This may even extend to an obligation to completely replace or rebuild the deficient product or work. This liability, however, is not what the coverages in question are designed to protect against. ***The coverage is for tort liability for physical damages to others and not for contractual liability of the insured for economic loss because the product or completed work is not that for which the damaged person bargained***.

281 S.C. at 596-97, 316 S.E.2d at 712 (emphasis added).

The McEaddys contracted with the insured, Low Country, to build them a new concrete seawall. The McEaddys allege that Low Country built this seawall defectively. Under <u>C.D. Walters Construction</u>, Low Country "may be liable as a matter of contract law to make good on products or work which is defective or otherwise unsuitable," and this "may even extend to an obligation to completely replace or rebuild the deficient product or work," but this is <u>not</u> the risk intended to be insured by the Policy.

Cincinnati is not obligated to indemnify Low Country for its faulty construction of the seawall, because faulty workmanship is not an "occurrence" under the Policy. Cincinnati is not

obligated to cover the cost of removing, repairing or replacing the defective seawall. While erosion damage to the soil resulting from Low Country's faulty workmanship may be an "occurrence" under the Policy, coverage for such erosion damage is excluded by exclusions discussed *infra.*

## IV. POLICY EXCLUSIONS PRECLUDE COVERAGE

Policy exclusions b, j(5), j(6), k, l, and m work in concert with the definitions of "property damage" and "occurrence" to effectuate the purpose of commercial general liability insurance. See Century Indem. Co. v. Golden Hills Builders, Inc., 348 S.C. 559, 565-66, 561 S.E.2d 355, 358 (2002) ("This type of insurance is not intended to insure business risks, i.e., risks that are the normal, frequent, or predictable consequences of doing business, and which business management can and should control or manage.") Even assuming the Underlying Action alleges "property damage" caused by an "occurrence," such damage is precluded by Policy exclusions. For example, the Underlying Action alleges erosion damage to the land resulting from the defective seawall. *Underlying Complaint ¶14* Even if erosion damage constitutes "property damage" caused by an "occurrence," such damage is precluded by Policy exclusions. The exclusions outlined below preclude damages arising out of contract, the insured's product itself, the insured's work itself, or impaired property associated with the insured's product or the insured's work.

### A. Exclusion l "Your Work" Exclusion: The Policy Does Not Cover Damage to the Insured's Work Or Arising Out of the Insured's Work

Exclusion l is commonly known as the "your work" exclusion and has been frequently reviewed by courts in South Carolina. Exclusion l states:

This insurance does not apply to:

    **l.**      **Damage to Your Work**

1223361                                                 8

> "Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".
>
> This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

The Policy defines "your work" as:

> (1) Work or operations performed by you or on your behalf; and
>
> (2) Materials, parts or equipment furnished in connection with such work or operations

"Your work" includes:

> (1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and
>
> (2) The providing of or failure to provide warnings or instructions.

This "your work" exclusion excludes coverage for the allegedly defective seawall, or any warranties or representations Low Country made with respect to the fitness, quality, durability, performance, or use of the seawall. In addition, this exclusion excludes coverage for property damage "arising out of" Low Country's work, including property, land, soil, dirt lost due to erosion. Therefore, Cincinnati is not obligated to indemnify Low Country for its work (the defective seawall) or damages "arising out of" its work (property lost due to erosion). See Builders Mut. Ins. Co. v. Kalman, 2009 WL 4807003, *6 (D.S.C. 2009) (holding the "your work" exclusion precluded coverage for the insured's faulty workmanship and defective construction *as well as* resulting water damage).

The "your work" exclusion would not apply if Low Country had used a subcontractor. However, it is undisputed that the insured Low Country Concrete Construction, Inc. performed

1223361                                        9

<u>all of the work itself</u>, and did not hire a subcontractor. In fact, the insured admits that it did not use subcontractors.

First, in the Underlying Action the insured Low Country Concrete Construction, Inc., responded to the McEaddys' interrogatory requesting information about subcontractors used to build the seawall as follows: "The Defendant did not hire any contractors or subcontractors on this particular job." ***Exhibit E** – Low Country's Responses to Plaintiffs' Interrogatories ¶22*. Second, in a sworn affidavit, the insured Low Country Concrete Construction Inc.'s President, Jerry Vereen, attested:

> Low Country Concrete Construction, Inc. sometimes executes contracts and performs work under the business name of "Low Country Concrete" and/or "Low Country Concrete, Inc." However, those entities do not exist in and of themselves and they are not distinct or different from Low Country Concrete Construction, Inc.
>
> The contract entered for the construction of the seawall for [the underlying plaintiff] is an example of a contract entered by Low Country Concrete Construction, Inc. under the name of "Low Country Concrete, Inc." In fact, the entity which contracted with [the underlying plaintiff] is Low Country Concrete Construction, Inc.

***Exhibit F** – May 16, 2008 Affidavit of Jerry Vereen ¶3 &4*. Finally, the separate, independent counsel retained by the insured, Dunn Hollingsworth, Esq., stated in correspondence to the McEaddys' counsel:

> My client indicated that Low Country Concrete Construction, Inc. was the contractor which performed the contract with your client, ***that it had no subcontractors in connection with the work***, and that there is no such entity as Low Country Concrete, Inc.

***Exhibit G** – April 28, 2008 Letter from Attorney Dunn Hollingsworth to counsel to McEaddys' counsel* (emphasis added).

1223361                                          10

The United States District Court in South Carolina recently analyzed a similar construction defect case and the "your work" exclusion. Charleston Builders Mut. Ins. Co. v. Kalman, 2009 WL 4807003 (D.S.C. December 8, 2009). In Kalman, the plaintiffs alleged construction defects to their home causing water intrusion damage. Following Auto Owners v. Newman, the U.S. District Court held that the defective construction itself was not an occurrence, thus the policy did not cover the cost to remove, repair, or replace the faulty workmanship. "In this case, the court finds that the construction defects of the Residence are not, themselves, sufficient to constitute an 'occurrence.'" Id.

Another issue in Kalman was whether the policy provided coverage for the water intrusion damage resulting from the defective construction, similar to erosion damage the McEaddys may be contending resulted from Low Country's faulty construction. The Kalman court held that the "your work" exclusion applied (because the subcontractor exception had been removed by an endorsement). The Kalman court held that "the water intrusion sustained as a result of faulty workmanship arose after [the insured] and its subcontractors had finished their work, meaning the Residence was included in the 'products-completed operations hazard' provision," and the "your work exclusion bars coverage in this case." Id. at * 6.

The "your work" exclusion applies, and Cincinnati is not obligated to indemnify Low Country for the allegedly defective seawall or property damage "arising out of" the seawall, including property lost due to erosion.

### B. "Exclusion n" Excludes Coverage for Repair or Replacement of the Defective Seawall

Even if the "your work" exclusion does not prevent coverage, "exclusion n" also bars coverage for removal, repair, and replacement of the defective seawall, even where repair of the seawall may be incidental or necessary to the repair of property damage covered by the policy.

In <u>Auto Owners v. Newman</u>, the defective stucco application was performed by an insured's subcontractor, thus the "your work" exclusion did not apply to prevent coverage. However, South Carolina Supreme Court noted that "another policy exclusion bars coverage for damage to the defective workmanship itself," even where removing and repairing the defective stucco was incidental to repairing the resulting water intrusion damage caused by the defective workmanship. <u>Auto Owners v Newman</u>, 385 S.C. at 197, 684 S.E.2d at 546.

Exclusion n states:

> This insurance does not apply to:
>
> **n. Recall of Products, Work or Impaired Property**
>
> Any liability or damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:
>
>   (1) "Your product";
>
>   (2) "Your work"; or
>
>   (3) "Impaired property";
>
> if such product, work or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

The Supreme Court applied "exclusion n" to the defective stucco workmanship in <u>Newman</u> and stated:

> Specifically, the policy exclusion provides that the insurance does not cover damages "claimed for any loss, cost or expense . . . for the repair, replacement, adjustment, removal or disposal of . . . 'Your product'; . . . 'Your work'; or . . . "Impaired property'; if such product, work or property is withdrawn . . . from use . . . because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it." *These terms unambiguously prohibit recovery for the cost of removing and replacing the defective stucco – even when the replacement of the defective work may be incidental to the repair of property damage covered by the policy*

> - and serve as one of the bases for this Court's acknowledgment that a claim solely for economic losses resulting from faulty workmanship part of an insured contractual liability for which a CGL policy is not intended to cover.  See, L-J, 366 S.C. at 122, 621 S.E.2d at 35.  Accordingly, we hold that any amount in the arbitrator's allowance allotted to *the removal and replacement of the defective stucco is not covered under the CGL policy.*"

Auto Owners v Newman, 385 S.C. at 197-198, 684 S.E.2d at 546-547(emphasis added).

Based on the Supreme Court's application of exclusion n, this exclusion is yet another reason that the removal and replacement of the defective seawall is not covered by the Cincinnati CGL Policy.

### C. The Policy Does Not Cover Contractual Liability

The Policy does not cover damages arising in contract. The Policy does not cover:

> "Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement.

According to the Underlying Action, on December 10, 2002, the McEaddys entered into a contract with Low Country to "remove a pre-existing wooden seawall/bulkhead and to construct a new concrete seawall/bulkhead on the property." *Underlying Complaint ¶9*. The McEaddys allege Low Country built a defective seawall, and brought a breach of contract claim against Low Country for the cost to repair or replace it. *Underlying Complaint ¶13, 15 & 41-47*. The McEaddys allege damages arising in contract, which this Policy exclusion expressly precludes (and, as mentioned above, such damages are not an "occurrence" in any event). Therefore, Cincinnati is not obligated to indemnify Low Country for damages arising in contract.

### D. The Policy Does Not Cover Damage to Property

Exclusions j(5) and j(6) reflect the principle that commercial general liability coverage is for damage to other property caused by an accident, and not for economic loss because the Low Country's product, or Low Country's work, was not that for which the McEaddys bargained.

### Exclusion j(5)

The Policy does not cover "property damage" to:

> That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations

If the property damage occurred while Low Country was actively working on the seawall, this Policy exclusion j(5) precludes coverage for it.

### Exclusion j(6)

To the extent the Underlying Action alleges property damage occurring before Low Country completed the concrete seawall (even if not occurring while Low Country was actively working on the seawall and thus excluded by exclusion j(5) above), this Policy exclusion j(6) precludes coverage for it.

The Policy does not cover "property damage" to:

> That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.
>
> [This] exclusion does not apply to "property damage" included in the "products-completed operations hazard."

The Policy defines "your work" as:

> (1)     Work or operations performed by you or on your behalf; and
>
> (2)     Materials, parts or equipment furnished in connection with such work or operations

"Your work" includes:

> (1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and
>
> (2) The providing of or failure to provide warnings or instructions.

The Policy does not cover the allegedly defective concrete seawall, or any warranties or representations Low Country made with respect to the fitness, quality, durability, performance, or use of the seawall.

This exclusion is restored if the "property damage" is included in the "products-completed operations hazard." "Property damage" is included in the products-completed operations hazard if it occurs away from premises owned or rented by Low Country, and arises out of Low Country's work, so long as that work has been completed. Therefore, "the products-completed operations hazard does not include 'property damage' which arose out of [the insured's] work that had not yet been completed." Century Indem. Co. v. Golden Hills Builders, Inc., 348 S.C. 559, 568, 561 S.E.2d 355, 359 (2002). See also Laidlaw Envtl. Servs. (TOC), Inc. v. Aetna Cas. & Sur. Co. of Illinois, 338 S.C. 43, 49, 524 S.E.2d 847, 850 (Ct. App. 1999) ("[W]ork that has not yet been completed is still in progress and not covered under the products-completed operations coverage."). To the extent the Underlying Action alleges property damage occurring before Low Country completed the concrete seawall, this Policy exclusion precludes it.

### E. The Policy Does Not Cover Damage to the Insured's Product Or Arising Out of the Insured's Product

Pursuant to exclusion k, the Policy does not cover "property damage" to Low Country's product "arising out of it or any part of it." The Policy defines "your product" as:

> (1)  Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:
>
> (a)  You;
>
> (b)  Others trading under your name; or
>
> (c)  A person or organization whose business or assets you have acquired; and
>
> (2)  Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

"Your product" includes:

> (1)  Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and
>
> (2)  The providing of or failure to provide warnings or instructions.

To the extent the Underlying Action alleges property damage to Low Country's product or arising out Low Country's product, this Policy exclusion precludes it. Therefore, Cincinnati is not obligated to indemnify Low Country for any goods or products used by Low Country to construct the concrete seawall; for any warranties or representations Low Country made with respect to the goods or products used by Low Country to construct the concrete seawall; or any property damage arising out of the goods or products used by Low Country to construct the concrete seawall, including property lost due to erosion.

### F. The Policy Does Not Cover Damage to Impaired Property

The underlying complaint alleges damages of "loss of use" and "loss of value" of the property. *Underlying Complaint ¶ 15*.

The Policy does not cover:

> "Property damage" to "impaired property" or property that has not been physically injured, arising out of:
>
> (1)     A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or
>
> (2)     A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.
>
> "Impaired Property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:
>
> a.     It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or
>
> b.     You have failed to fulfill the terms of a contract or agreement;
>
> if such property can be restored to use by:
>
> a.     The repair, replacement, adjustment or removal of "your product" or "your work"; or
>
> b.     Your fulfilling the terms of the contract or agreement.

To the extent the Underlying Action alleges the McEaddys' property cannot be used or is less useful because of the allegedly defective seawall, this Policy exclusion precludes coverage because such property can be restored to use by the repair and replacement of Low Country's work (the seawall). In addition, CGL policies do not cover economic damages for the diminution in value of property. Auto Owners Ins. Co. v. Brazell Builders, Inc., 356 S.C. 156,

1223361                                                17

588 S.E.2d 112 (2003). Moreover, any alleged diminished value of the property is temporary and value would be restored by the repair or replacement of the defective seawall. Therefore, Cincinnati is not obligated to indemnify Low Country for property damage to "impaired property."

## CONCLUSION

The Underlying Action does not allege "property damage" caused by an "occurrence" and, even assuming it did, all such damage is precluded by Policy exclusions.

First, Cincinnati is not obligated to indemnify Low Country for the allegedly defective seawall, because faulty workmanship is not an "occurrence" under the Policy. Even assuming it was an "occurrence" under the Policy, the cost to remove, repair or replace the defective seawall is excluded by Policy exclusions, particularly the "your work" exclusion.

Second, Cincinnati is not obligated to indemnify Low Country for property damage due to erosion because the "your product" or "your work" exclusions exclude coverage for property damage "arising out of" Low Country's product or work. If the property damage lost due to erosion constituted "property damage" caused by an "occurrence" that was not excluded by a Policy exclusion, Cincinnati would only be responsible to indemnify Low Country for the cost to replace the eroded soil and dirt. Cincinnati is not obligated to cover any alleged "loss of use" or diminution in value of the property because such economic damage is excluded by the Policy and is temporary, and full value will be restored when the wall is rebuilt.

Under no circumstances, would Cincinnati be responsible for indemnifying Low Country for the cost to repair or replace the allegedly defective seawall. Cincinnati respectfully requests this Court declare that Cincinnati is not obligated to indemnify its insured, Low Country, for any and all claims against Low Country in the Underlying Action.

s/James T. Hewitt
James T. Hewitt (Fed. I.D. 6045)
Jason D. Maertens (Fed I.D. 10144)
Smith Moore Leatherwood LLP
300 East McBee Avenue, Suite 500 (29601)
Post Office Box 87
Greenville, SC 29602
Office: (864) 240-2433; Fax: (864) 240-2475
E-mail: Jay.Hewitt@smithmoorelaw.com
Jason.Maertens@smithmoorelaw.com

March 4, 2010          Attorneys for Plaintiff